IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-1400-WDM-BNB

DOUBLECLICK INC., a Delaware Corporation,

      Plaintiff,

v.

LORI PAIKIN, an individual,

      Defendant.

---

## ORDER

---

Miller, J.

      This matter is before me on Plaintiff DoubleClick Inc.'s (DoubleClick) motion for a preliminary injunction. After consideration of the parties briefs and the testimony presented at the hearing, I conclude that the motion should be granted for the following reasons.

<u>Background</u>

      DoubleClick is a Delaware corporation seeking a preliminary injunction to prevent Defendant Lori Paikin, a former employee, from violating confidentiality and non-competition agreements.

      DoubleClick is in the business of providing cooperative data services and strategic and analytical services designed to help direct marketers succeed in their business. Paikin worked for their company as a Senior Vice President of Merchandise Services in their Abacus division until February of 2005, when she

decided to leave the company.  The parties entered into a separation agreement which provided that Paikin be placed on paid sabbatical for one month, and continue to pay her regular base salary for six months thereafter.  These payments would be accelerated if Paikin got a new job that did not violate the separation agreement.  In return, Paikin agreed to various waivers of liability and confidentiality and non-competition clauses which generally prohibited Paikin from ever disclosing DoubleClick's confidential information, and from working for DoubleClick's competitors for up to one year and seven months.  The agreement also provided that if Paikin breached these prohibitions, that DoubleClick would be entitled to an injunction.

A few months later Paikin notified them that she had accepted a new job unrelated to her work with DoubleClick.  In response, the company paid Paikin her remaining separation pay in a lump sum.  Then, in July 2005, DoubleClick learned that Paikin was working for NextAction Corporation, a direct competitor of DoubleClick.  Therefore, DoubleClick seeks an order enjoining Paikin from violating the separation agreement and from misappropriating DoubleClick's trade secrets.

Standard of Review

A temporary restraining order or preliminary injunction is an extraordinary remedy, and the right to relief must be clear and unequivocal.  *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).  The decision to grant injunctive relief is a matter of discretion.  *Id.*

In order to obtain preliminary injunctive relief, the moving party must establish: (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a

2

showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Id.* In cases where the movant has prevailed on the other factors, the Tenth Circuit uses a liberal definition of "probability of success": the plaintiff need only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (internal quotations omitted).

In addition, the following types of preliminary injunctions are disfavored and require that the movant satisfy an even heavier burden: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief they may recover at the conclusion of a full trial on the merits. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (citing *SCFC ILC*, 936 F.2d at 1098-99). These situations "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* Moreover, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on [the Tenth Circuit's] modified-likelihood-of-success-on-the-merits standard." *Id.* at 976.

3

Discussion

1.    Disfavored Categories of Preliminary Injunctions

a.    Injunctions that Alter the Status Quo

In this case, the parties disagree about whether or not DoubleClick must meet the heightened burden from *O Centro*.  Paikin argues that the requested injunction would disturb the status quo because it would force her to stop working at a job she has been at for several months.  Conversely, DoubleClick argues that it merely seeks to restore the status quo.

In *O Centro*, a majority of the Tenth Circuit, sitting *en banc*, found that even though the plaintiffs had actively used an illegal drug in their religious ceremonies for years, the status quo was the enforcement of federal drug laws.  *Id.* at 973.  Plaintiffs argued that the status quo was their possession and sacramental use of the drug *hoasca*, and the government had altered the status quo by initiating drug enforcement actions against them.  Rejecting this reasoning, Judge Murphy stated that:

> It simply cannot be the case that a party can establish the status quo in
> a given case through secretive or clandestine activity. There is enough
> natural incentive to manipulation in events preceding litigation, and in
> litigation itself, without providing judicial endorsement of surreptitious
> conduct by wrapping it in a cloak of "status quo." The "last peaceable
> uncontested status existing between the parties before the dispute
> developed," 11A Wright & Miller § 2948, at 136, is most surely the open
> and notorious actions of the parties before the dispute.

*Id.* at 981 (J. Murphy concurring).[1]

Applying these principles to our case, I find that the parties' positions before

---

[1] Although this en banc decision was highly fragmented, this portion of Judge Murphy's concurrence represents the opinion of a majority of the court.

4

Paikin began to work for NextAction represent the status quo.  Paikin's testimony at

the hearing indicates that she attempted to hide her employment with NextAction from

DoubleClick.  Under *O Centro*, she is not allowed to establish the status quo through

secretive or clandestine activity.  Moreover, although Paikin contests the validity of

the seperation agreement, DoubleClick has always maintained its enforceability.

Therefore, the last peaceable uncontested status was before Paikin went to work for

NextAction.

      b.     <u>Mandatory as Opposed to Prohibitory Injunctions</u>

Next, Paikin argues that an order forcing Paikin to leave her current position

would be mandatory in nature.  Conversely, DoubleClick argues that the requested

preliminary injunction merely prohibits Paikin from violating the express terms of their

agreement.

Clearly, this inquiry is related to the question of whether or not the requested

injunction alters the status quo.  Indeed, "most courts decide whether a given

preliminary injunction is 'mandatory' or 'prohibitory' by determining whether or not it

alters the status quo."  *O Centro*, 389 F.3d at 979 (J. Murphy concurring).  However,

not all injunctions that alter the status quo are mandatory in nature.  Thus, a court

must also consider whether the injunction will "'affirmatively require the nonmovant to

act in a particular way, and as a result [will] place the issuing court in a position where

it may have to provide ongoing supervision.'"  *Id.* (quoting *SCFC ILC*, 936 F.2d at

1099).

Accordingly, I find that DoubleClick's requested preliminary injunction is

properly characterized as merely prohibitory.  As discussed above, the injunction would not alter the established status quo.  Moreover, it requires no more supervision than any other injunction this Court orders.  And, no affirmative action is required. Paikin could comply by simply refraining from working at NextAction.

      c.    <u>Injunctions that Afford Substantially All the Relief Possible at Trial</u>

Finally, Paikin also argues that DoubleClick's requested order falls into the last disfavored category – preliminary injunctions that afford the movant substantially all the relief possible at trial.  However, the Tenth Circuit has clarified that "[t]he only reason to disfavor a preliminary injunction that grants substantially all the relief sought is if it would 'render a trial on the merits largely or completely meaningless.' Therefore, '[this test] must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone.'" *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001) (quoting *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 35 (2d Cir. 1995)).  In this case, a bond should adequately compensate Paikin for her lost income, if she ultimately prevails.

I also note that other relief, including damages, is sought.  Accordingly, I conclude that this case is not in the third disfavored category.

2.    <u>Standard Preliminary Injunction Analysis</u>

Addressing the four standard requirements for a preliminary injunction, I find and conclude as follows:

      a.    <u>Likelihood of Success on the Merits</u>

Paikin admits that her employment with NextAction violates the terms of her

seperation agreement with DoubleClick, but she makes various arguments why it is unenforceable.  First, she argues that it is unenforceable under Colo. Rev. Stat. § 8-2-113(2) because it fits neither the trade secrets exception, nor the management personnel exception.  Second, she argues that it is overbroad in terms of duration and geographic scope.  Third, she argues that it is void in its entirety, relying on what appears to be a duress theory.

In the face of these challenges, DoubleClick must produce evidence that the agreement is indeed enforceable.  Their burden of proof, however, varies depending on whether or not they satisfy the other three prongs of a preliminary injunction inquiry.  As discussed below, I find that DoubleClick has met the other three requirements, and therefore must only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."  *Lundgrin*, 619 F.2d at 63.

i.     The Trade Secrets Exception

Covenants not to compete are generally void in Colorado unless they fit one of the statutory exceptions.  § 8-2-113(2).  One of these exceptions is for contracts "for the protection of trade secrets."  § 8-2-113(2)(b).  In order to fall under this exception, DoubleClick must show that it possesses trade secrets that are worth protecting, and that Paikin had access to these secrets.  *See Porter Industries, Inc., v. Higgins*, 680 P.2d 1339 (Colo. App. 1984).  "What constitutes a 'trade secret' is a question of fact for the trial court."  *Id.*  Under the Colorado Uniform Trade Secrets Act, a trade secret is defined as:

the whole or any portion or phase of any scientific or technical
information, design, process, procedure, formula, improvement,
confidential business or financial information, listing of names,
addresses, or telephone numbers, or other information relating to any
business or profession which is secret and of value.  To be a "trade
secret" the owner thereof must have taken measures to prevent the
secret from becoming available to persons other than those selected by
the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7-74-102(4) (2005).  In addition, the Colorado Court of Appeals has

also listed the following factors to be considered:

"(1) the extent to which the information is known outside the business,
(2) the extent to which it is known to those inside the business, *i.e.,* by
the employees (3) the precautions taken by the holder of the trade
secret to guard the secrecy of the information, (4) the savings effected
and the value to the holder in having the information as against
competitors, (5) the amount of effort or money expended in obtaining
and developing the information, and (6) the amount of time and expense
it would take for others to acquire and duplicate the information."

*Porter Industries*, 680 P.2d at 1341 (quoting *Sw. Bell Tel. Co. v. State Corporation*

*Comm'n,* 629 P.2d 1174 (Kan. Ct. App. 1981)).  The Tenth Circuit has also noted that

a trade secret can consist of a number of different components, all of which are

publically known, so long as the specific combination of information could lead to a

competitive advantage. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1130 (10th Cir.

2003).  "In short, a trade secret 'may consist of any formula, pattern, device, or

compilation of information which is used in one's business, and which gives [the

possessor] an opportunity to obtain an advantage over competitors who do not know

or use it.'"  *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 911 (Colo. Ct. App. 1997)

(quoting *Management Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763 (Colo. Ct.

App. 1988)).  And, particularly relevant in this case, knowledge of what a former

employer plans to bid on an future contract can be a trade secret.  *Ovation Plumbing, Inc. v. Furton*, 33 P.3d 1221, 1224 (Colo. Ct. App. 2001).

In this case, DoubleClick argues that Paikin learned of two types of trade secrets while with their company: pricing strategies and a "one-stop shopping" program.  As to pricing strategies, Brian Rainey, the CEO of DoubleClick's Abacus division, tesitified at the hearing that they retained a consultant for the last year and a half to help develop specific pricing strategies that would help increase market share.  Consistent with this project, the company created a list of the lowest prices that DoubleClick was willing to offer its clients.  Paikin knew this information and that it could benefit a competitor by allowing them to underbid DoubleClick.

Similarly, Rainey's testimony indicates that DoubleClick has put considerable effort into developing a new "one-stop shopping" strategy.  In general terms, this strategy involves offering DoubleClick's full range of services to key customers in such a way as to eliminate any need for these customers to do business with competitors.  According to Rainey, this would be a significant change in the cooperative data services industry.  It is undisputed that Paikin was significantly involved in selecting key clients that would be targeted for one-stop shopping, and she admits that this knowledge could be of use to a competitor.  Indeed, Rainey's testimony indicates that a competing company who knew they might be shut out of a major client's business completely, would likely be willing to offer very low rates to prevent this scenario.

There is, however, a countervailing factor.  Paikin testified at the hearing that

DoubleClick has actually done presentations on their one-stop shopping strategy at trade conferences.  This certainly weighs against characterizing the strategy as a trade secret.  However, there is no indication that the identity of the targeted clients – itself a potential trade secret – was disclosed at these presentations.

Therefore, having considered the language of Colo. Rev. Stat. § 7-74-102(4), the factors from *Porter Industries*, and the holding of *Ovation Plumbing*, I find that DoubleClick has met its *Lundgrin* burden by presenting evidence tending to show that they have trade secrets, and that Paikin knew of them.

<ins>ii.    The Executive and Management Personnel Exception</ins>

As an alternative to the trade secrets exception, DoubleClick can also justify the restrictive provisions of the separation agreement if falls under the executive and management personnel exception.  Colo. Rev. Stat. § 8-2-113(2)(d).  This provides that the general prohibition against non-competition agreements will not apply to "[e]xecutive and management personnel and officers and employees who constitute professional staff to executive and management personnel."  *Id.*  Whether or not Paikin's former job fits this exception is a question of fact, and the Court should look beyond mere job titles to see what the job actually entails.  *Management Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763 (Colo. Ct. App. 1988); *see Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789 (Colo. Ct. App. 2001).

The evidence here indicates that Paikin's former title was Senior Vice President of Merchandise Services, she supervised approximately fifty employees, and she had only three levels of management above her, even though DoubleClick is

10

a large, multi-national corporation.  Moreover, she was in charge of a significant part of the company's business, and was at least partially involved in setting company strategy.  This evidence suffices to meet DoubleClick's burden under *Lundgrin* that, at a minimum, there exists serious and substantial evidence that she qualifies as a management employee.

iii.     Reasonableness of Duration and Geographic Scope

A non-compete clause must be reasonable in duration and geographic scope. *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1283 (D. Colo. 2003).  The length here, a maximum of 18 months, is well within terms approved by Colorado courts.  *Id.*  Even though no geographic limitation exists here, Colorado courts have approved nationwide restrictions.  *Id.*  Further, if I were to ultimately conclude that some term was unreasonable in duration or scope I have the authority to modify the agreement to cure any unreasonable provision.  *Whittenberg v. Williams*, 135 P.2d 228 (Colo. 1943).  In these circumstances, DoubleClick has met its *Lundgrin* burden.

iv.     Duress

Paikin claims that even if the separation agreement fits one of the statutory exceptions, it is still not enforceable because it was obtained through the improper threat of withholding separation pay.  Paikin claims that in the past, the company offered substantial severance packages to employees that they terminated.  However, after Paikin resigned, DoubleClick refused to grant any separation pay because she was not terminated but rather resigned.  Although Paikin never argues that

11

DoubleClick was obligated to pay her separation pay, she claims that somehow these facts constitute duress.

Under Colorado law, "[a] contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative. *Vail/Arrowhead, Inc. v. Dist. Ct.* 954 P.2d 608, 612 (Colo. 1998) (citing Restatement (Second) of Contracts § 175 (1981)). A threat is improper if it is "so shocking that the court will not inquire into the fairness of the resulting exchange." *Id.* at 613. Also, as a general rule, no matter what threats have been made, if a party takes time for reflection, especially if they have legal counsel, there is no duress. *Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. Ct. App. 1979).

Here, the "threat" that Paikin claims – not receiving separation pay – certainly does not rise to the shocking level required for duress. Moreover, she admits that she had time to consult, and did consult with legal counsel. Therefore, Paikin's duress argument is unlikely to prevent DoubleClick from succeeding on the merits.

Finally, Paikin argues that the agreement is unenforceable because she signed it after she had resigned and was not, *ipso facto*, management personnel to qualify under the statutory exception. This argument is misdirected. She may well have been such a management employee prior to striking an agreement for the apparent consideration of separation pay and other benefits. Paikin cites no relevant authority why such an agreement would not be enforceable.[2] The timing of the agreement does

---

[2] The case Paikin cites, *Management Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763 (Colo. 1988) does not stand for such a rule. Rather, the case simply observes that the agreement at issue applied to a position different from the one the

not preclude its enforceablity.

In sum, I find that DoubleClick has met its burden under *Lundgrin*, by raising "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." 619 F.2d at 63.

b.   Irreparable Injury

To meet the next prong of a standard preliminary injunction inquiry, DoubleClick must also demonstrate that they will suffer irreparable harm unless the injunction is granted. *SCFC ILC,* 936 F.2d at 1098. This burden can be met by showing that "the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp*, 269 F.3d 1149, 1156 (10th Cir. 2001). Indeed, the difficulty of proving damages in non-competition clause cases has made injunctive relief the preferred remedy in Colorado. *DBA Enters., Inc. v. Findlay*, 923 P.2d 298, 302 (Colo. Ct. App. 1996).

In this case, should they win at trial, DoubleClick could be entitled to damages equal to their lost profits. *DBA Enters.*, 923 P.2d at 302. However, the hearing evidence indicates that although the company might lose enormous profits, they would have great difficulty proving these damages with any precision. Therefore, I find that DoubleClick has demonstrated that they would be irreparably harmed if the

---

plaintiff held ("[i]t is clear that the restrictive covenants were not predicated on the position Miller held." *Id.* at 765). The agreement at issue here was certainly predicated on the position that Paikin had held.

preliminary injunction is not granted.

      c.     <u>Balance of Harm</u>

The third prong of a standard preliminary injunction inquiry requires DoubleClick to demonstrate that the balance of harms weighs in their favor, and that denying the injunction will cause more harm than granting it.  *SCFC ILC,* 936 F.2d at 1098.  Here, the effect of an injunction on Paikin is fairly clear.  She will be unable to work in her chosen field, where she presumably can obtain the most pay.  There is no doubt this is a substantial consideration, however, the setting of an appropriate bond should be sufficient to reimburse Paikin, if she eventually prevails at trial.

On the other hand, the threat to DoubleClick is quite substantial, as they are potentially faced with the loss of trade secrets, and significant damage to their business.  Therefore, I find that the balance of harms weighs in DoubleClick's favor.

      d.     <u>Public Interest</u>

The final showing that Doubleclick must make is that the preliminary injunction will not be adverse to the public interest.  *SCFC ILC,* 936 F.2d at 1098.  The fact that Colorado statutes permit such agreements demonstrates that enforcing one in these circumstances would not be against the public interest.  Also, as discussed above, Colorado courts have noted that injunctive relief is the preferred remedy in these types of cases.  *DBA Enters., Inc. v. Findlay*, 923 P.2d at 302.  Therefore, I find that DoubleClick has met this burden.

<u>Conclusion</u>

For the reasons stated above, I find that a preliminary injunction should issue

upon bond.

Accordingly, it is ordered:

1.    Plaintiff's motion for preliminary injunction, filed July 27, 2005 (Docket No. 2), is

granted.

2.    Upon conditions of security as provided in Fed. R. Civ. P. 65(c) and specific

conditions as provided in Fed. R. Civ. P. 65(d), Defendant, and any and all

other persons in active concert or participation her are enjoined, pending the

outcome of these proceedings or further order from the court, from: (1) violating

the non-competition, non-solicitation, and confidentiality provisions of the

separation agreement between her and Plaintiff, and (2) misappropriating

Plaintiff's trade secrets.

3.    On or before December 7, 2005, Plaintiff shall submit a tendered order as

required by D.C.Colo.LCivR 65.1B.

4.    On or before December 12, 2005, both parties shall submit a statement

recommending the amount and terms of the security required by Fed. R. Civ. P.

65(c).

DATED at Denver, Colorado, on November 29, 2005.

BY THE COURT:


/s/ Walker D. Miller
United States District Judge